Good afternoon. May it please the Court. My name is Matthew Stigler on behalf of Ryan Wheeler and I'd like to reserve three minutes of my time for rebuttal. Okay, so let me ask this. The thing that, to the extent that you may have an argument which is somewhat appealing, how do you get past the address standard? I mean, this is a guy who is, at least the record is, that he told Mr. Konjac that he wanted to go to trial, that he was being railroaded, no alibi witnesses. Mr. Konjac's testimony was that he didn't remember Mr. Wheeler, but it's his practice to pass these offers on to the client unless the client unequivocally says that they want to go to trial. State court said given the outburst from Mr. Wheeler before, they couldn't conclude by the promise of the evidence that he had, how do you get past the second-pronged strickland on this record and on the AEDPA standard? Well, let me start with the AEDPA standard, if I may. I think that the rule that controls here is a rule that this Court has recognized several times, that a State court decision which analyzes ineffective assistance to counsel, and I'm quoting from Jacobs v. Horn now, where it analyzes it based on a single factor to the exclusion of other relevant factors, that that involved an unreasonable application of the same point more recently in Simmons v. Beard, where it said, quote, a State court's fact-finding may qualify as unreasonable where the State court had before it and apparently ignored evidence supporting the habeas petitioner's claim. So to me, the critical point in the AEDPA analysis, I don't think this Court even needs to reach necessarily whether or not the Court got it right in their analysis of Konjac and their analysis of the innocence, because the critical thing that they did was that they failed to consider the most important evidence that's in front of them. Which is? I'm sorry. Which is what? Well, the objective evidence about whether or not there's a reasonable probability that he would have pled guilty here. What is that? That's the question that they're looking at, is this guy going to plead guilty? And in looking at that, they failed to ever ask the question, is this a plea offer that's a favorable plea offer? Before or after he's sentenced? I mean, what's a favorable plea offer depends on the time you take that picture. After he's sentenced to, what, 15 to 30, 10 to 20 looks really good. But before he's sentenced and when he's not even at the trial stage yet. Before he's sentenced, it looked even better, because before he's sentenced, he was facing – he was, in addition to the three felonies he was convicted for, he was also facing a charge for attempted murder, which had a higher sentence than any of the others. What year was this? The trial? The, yeah, right, the trial. 2001, I believe. Okay. Well, what's the objective evidence that if this plea had been conveyed, he would have bought it? I think the most important objective evidence is – and what the State court didn't consider at all is whether the plea offer was favorable and whether – and the strength of the evidence against him at trial. Was this a good deal? And what happens if he turns down the deal? Yeah, but that's whether – yeah, that's for the State court to determine if they're being sentenced. But the question is, what did the defendant have that he had in his mind at that time which shows that he would have accepted the plea offer? Not whether the judge would have accepted it if he would have been in his shoes. What about – what about the defendant here indicates that he would have taken the offer? Well, I mean, a part of the reason why I'm answering the question the way that I am is because of what the Supreme Court has said in Strickland v. Washington and in Hill v. Lockhart in the appropriate way for courts to analyze prejudice in a circumstance like this. And what they've emphasized is that the probative evidence here, the really probative evidence, is the objective evidence, not the idiosyncrasies of the particular decision maker. So I can talk about, you know, what was in Wheeler's mind. And what is the objective evidence? Not that he should have taken it. Not that a reasonable defendant at that time with that alternative should have taken it. But the objective evidence is what about him that indicates that he would have taken it? Not that a reasonable defendant would have taken it. So you don't want to hear my – I mean, you're not asking about he was faced in 100 years if that – I think you think the situation is relevant. But I would like to hear you tell me what about this defendant that indicates that at that time he would have taken it? Not that he should have taken it. I understand that. But I think that whether he should have taken it is a part of what has to inform the court's analysis of whether he would have taken it. So – No, not necessarily. I mean, he certainly suggested that he wanted to go to trial. I mean, do we look at – would a reasonable person have taken it or would this person have taken it? That's my question. Not whether he should have taken it if he was reasonable, but what about him indicated that he would have taken it if given? In my mind, that's the less probative part of the prejudice case, but let me lay out that story as I understand it. This is a defendant who in three of his six prior cases had pled guilty. This is a defendant who, at his counsel's advice, waived his right to a jury trial in this case, and who did not insist on testifying at his own trial, and had no objection when his counsel at trial said, you know, they haven't proven guilty on a reasonable doubt, but at no point did counsel say, this guy is innocent. And so – None of that. I think those are all – I'm excruciatingly familiar with the Philadelphia criminal justice system. The fact he waived his right to a jury and proceeded before a bench trial, something like 90 percent of everybody coming through the criminal justice system in Philadelphia waives the right to a jury and proceeds before a bench trial, even people with rap sheets that would reach from the ceiling down to the floor, especially them, because the judges that they get are perceived to be better on reasonable doubt. So that really doesn't help. And the fact that he waived, pled guilty on three of his six, I mean, that's half empty and half full. That means he didn't plead guilty on three of his six. The fact that he did it before in 50 percent of the cases means he didn't do it in 50 percent of the cases. I don't know how any of that helps you. Especially when you throw a dead person into it. Well, but the standard here is a key part of it. I mean, we're not asking whether there's a certainty that he was going to plead guilty. Reasonable probability? Reasonable probability. He needn't prove that it's more likely than not. Could I ask you about that? Please. Is the prediction a question of fact?  It's in an immigration case in Kaplan, K-A-P-L-A-N. That suggested that a prediction, that was in terms of what the ALJ had found and the BIA and the standard of review, but that suggested that a prediction of what will happen is a question of fact. And so if this is a question of fact, then don't we owe the State Court deference? Well, I think that this case could be decided under either prong of 2254-D. I think that it would be perfectly appropriate for this Court to look at this case as a 2254-D2 case and ask whether this is a case where there was an unreasonable determination of the facts in light of the State Court record. And why is it unreasonable? Just because he previously pled in half of the cases? No, Your Honor. The reason why it's unreasonable is because the State Court adjudication here overlooked the most probative evidence that was in front of it. They failed to consider any of the objective indicia about whether or not this is a plea that he would have accepted. They didn't consider the fact that this guy was facing over 100 years of the time that the plea offer came in as part of their determination about whether an offer of 10 to 20 was favorable. They didn't consider the way that the evidence… That's the problem with this, and it is kind of like reading tea leaves, because what is favorable before trial heading in is very different than what looks like it's favorable after you've been convicted, especially once you've been sentenced. And how do we know? 10 to 20, that's a substantial hit. And he may not know that 10 to 20 means he's going to do 10, or maybe he's probably going to do 12. He might be looking at the 20 and say, I'm not going to run that risk because the PO is going to violate me for his chance against, and I'm not going to do 20 years. Or he may look at it and say, geez, 10 to 20, I know I'm going to be out in 20. That's a hell of a lot better than 130 or whatever the numbers add up to. But we can't say that either way, it seems to me, the state court looked at that equation, we couldn't say it was unreasonable. Well, but I mean, I think it's unreasonable in light of what they failed to consider in terms of those, the objective circumstances. But I also think that it's unreasonable in light of the weight that they gave to the testimony of trial counsel. I mean, there's a finding of fact in state court that the trial counsel didn't remember the particular circumstances of this case. I mean, this is five years later that he testified that he does hundreds of cases each year. And so he wasn't able to give any testimony about whether he actually told the defendant about this plea or what the defendant's reaction was. The testimony he gave was helpful from a fact finder's perspective. What he said was, I cannot remember Wheeler, but I do know what my practice is, and I don't see any reason why I would have varied from it. My practice is I always communicated to Wheeler unless, and the unless is unless the client unequivocally says, I'm going to trial. So either side of that equation means that either Wheeler knew about it and turned it down, or Wheeler said beforehand to Konchak, forget any talk to the DA, I'm going to trial. In either event, he wouldn't have taken, you could find that he would not have taken the deal. But what I'd submit is that there isn't any reasonable way to look at this record and conclude that that conversation happened. There was a conversation between Konchak and Wheeler where Wheeler said to him, you know what, I don't want to hear anything about whether there's a plea offer. I'm not interested. I'm determined to go to trial. Konchak met his client the day before the trial actually happened, had no prior contact with him. There was nothing in his files about whether or not there had been a plea offer. And as far as the state court record here shows, he walked in and they had a conversation about whether or not there was going to, whether or not they would have a judge trial or a jury trial. And Wheeler was trying to get him to go talk to his girlfriend to see if she could provide an alibi. There isn't any indication here. I mean, and I, there's a, there's a, you know, there are a lot of cases that provide a real contrast there where the lawyers have had a lot of prior communication about whether they want to plead guilty. They've talked to them about prior plea offers. The Boydon-Bonk case is a potential example of that kind of communication over time. I'm sorry. I have no doubt of that. Well, in this case, he did not, he said, the attorney said he originally, he could not recall whether he discussed the plea, but later on said that whether he did not want to plead guilty under any circumstances. He doesn't know whether the client wanted to plead guilty under any circumstances. Well, but the, but the, but the state court found his fact coming, coming out of that case, found as a fact that he, that he had notified him of the plea. And of course the trial lawyer isn't, wasn't. Because he came in after the plea had been rejected, as I recall. Right. Weeks afterwards. I mean, he couldn't have talked about it to them before because he wasn't his lawyer. Weeks afterwards. That's right. Yeah. And, and so, and, and, and, and that's an important point to make with this. Yeah, but which way does that cut? Well, I, I think that, I think that it cuts in his favor because, in, in, in, in Wheeler's favor here. Why? Because what Konchak had to say about whether or not he was willing to accept a plea offer five weeks after that offer was already dead was that, that was not evidence on which a, a court could reasonably base a, base a, it's President, President's decision here. Well, but the court could, but that could throw some light on his mental state of the defendant. It, it could throw some. And he thought he was in. He wanted to go to trial. He wanted to show he, he thought he was going to get off. He thought he had an alibi. Well, but. But that's beside the point. I, I certainly agree that it sheds some light on it, but I would submit that the, that the evidence about the, the, the, the strength of the evidence here about whether the plea offer was a favorable plea offer, that that kind of objective evidence sheds a lot more light on it. Then we have to give deference to the State court determination. Yeah, yes, Your Honor. And that deference is laid out in, in, in, in Section D2 of 2254, that only an unreasonable determination of the facts in light of the State court record. Did we say it's an unreasonable determination of the facts? I mean, that's. Yeah, that's where I started out. I, that's a tough one. I, I, I see that my time has expired. You have to, everybody wants to run away from that. I know. Usually they want to stay, stay longer. Okay. Mr. Zargar, thank you very much. Mr. Golderow. Anybody ever tell you you look like, almost exactly like Bill Mazzaro when you came in? The CEO of Channel 12. Oh, I didn't, I didn't realize. Yeah, sure. Right. I used to sing with Randy. Ah. Yeah. Interesting. I never, never, nobody's ever pointed that out to me before, Judge Mackey. May it please the Court, John Goldsboro from the District Attorney's Office. I'm sorry, I didn't hear your last name. Goldsboro. Yes, like City of Gold, Eldorado. So, yeah. So, Your Honor, of course, the State court. You don't mean like Barksite, do you? No, not. Okay. Thank you. So, the State court factual findings do control this case. They're reasonable. They're correct. They've been unrebutted. The State court's found, based on evidence presented and as a matter of credibility and the record that Wheeler would not have accepted the guilty plea offer had he not known of it, because there was clashing testimony in front of it, including from Wheeler himself. Why is this a fact question at all? Why is this a structural thing? What's the difference between this and an attorney going to sleep during a trial? Here you have an attorney. He's asleep. He's not giving his client a – he's not communicating a plea offer to his client. I don't see any difference between that and the attorney just going to sleep and not being present during a part of the case, which we've held to be – which courts have held to be structural and not a question of fact. In other circuits, it has been held. Yes. That prejudice is presumed in this sort of a situation. And why should we do it in this case? Well, there are several reasons. One of them is that the Supreme Court seems to be indicating that it's not. That, in fact, a – now, this Court did say in – is not a structural error. Well, in Hoffman v. Arabe in the Ninth Circuit, as Your Honor, I'm sure Your Honors are aware, the – That's my favorite circuit after the – Absolutely. I'm suffering some prejudice here. It was – I always liked it. There was a similar situation. And the Ninth Circuit had ordered reinstatement of the guilty plea offer. And the Supreme Court granted, sir, and added – I couldn't get the en banc court to do that in voice. Well, go ahead. The Court added the following question. What, if any, remedy should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to a fair trial? The Ninth Circuit had ordered that reinstatement. In response, the petitioner dropped the question, even though he had, of course, won in that he dropped his claim of ineffective assistance regarding the plea bargaining. So it mooted the question, and the Court decided not to consider it. But this is one of those questions that it has not – So how does that help us either way? I'm pointing out that they are indicating that perhaps a fair trial, as was also Last year, 571 F. 3rd, 1086, the dissents at 1094. It's indicating that perhaps a fair trial is, in fact, contrary to what this court said in Day and in Caruso, a fair trial is an adequate and sufficient remedy for the lack of conveyance of a guilty plea offer, which is a prosecutorial Well, that's not what they held. The fact that they didn't adjudicate it doesn't mean they held it. Well, I understand that. But they seem to be interested in the question because they added it to the grant. But they didn't adjudicate it. I understand. And that was my question. Yes. And I don't see – I see that there's a basic Sixth Amendment violation here because he doesn't have an attorney, and he has one. The attorney is not functioning as an attorney when he didn't convey a plea offer. And to me, I can't think of many things more horrendous, shocking and appalling than a defense attorney not conveying a plea offer. But then what happens is he goes to a perfectly fair trial, and none of his rights are violated at that fair trial. So the question is, is the Sixth Amendment covering a greater span than the Fifth Amendment? And this court held in both Day and Caruso that it does. It covers more than the Fifth Amendment. It seems there's an academic debate. There's been contrary articles in both the Harvard Law Review and the Brigham Young Law Review on that dissent in that Tenth Circuit case I mentioned. What does the University of Maryland say about it? Pardon me? When I read the University of Maryland, what do they say about it? Well, simply, they're on both sides. The Harvard Law Review takes this circuit's position that the Sixth Amendment covers more than the Fifth and that the offer should be reinstated in a situation like that if it's absolutely proved. But the Brigham Young argues no, that in fact the point of effective assistance of counsel is a fair trial, which was the point of the dissent. Well, yeah, but when you get ineffective assistance of trial, then you get into the question of fact, which my colleagues were addressing to counsel, and you have the district court sitting there, not as a district court judge, but as a psychiatrist and determining, or psychologist, and determining whether the plea would have been accepted or not. And I want to say something. I've been there. I've been. He took the deal. I've been a defense attorney. And you'd be surprised, a number of defendants, you wouldn't be surprised, who come up claiming not guilty, but you put under their nose something that is very appealing. Oh, sure. And they plead out. Sure. So why do we have to even get involved with this making the district court judge or a state judge determine what he would have done, reading his mind, when how many judges, let's face it, can read someone's mind who's in that quadri of going before a judge for a criminal trial and having a plea agreement that was never conveyed, whether he would have taken it or not? Well, because, like in all cases of ineffective assistance, we're trying to predict what would have happened had counsel behaved differently. Well, how can a judge predict that? Right. And you have to look at not only what the testimony is. I mean, they had a hearing here, of course, what the testimony is of the defendant, what the testimony is of the attorney about the likely inclination. But, of course, there's a certain randomness. But you have to also find some kind of objective evidence.  What do you think is the relevant objective? Pardon me? Mr. Stigler told us what he thought was the relevant objective facts. What do you think are the relevant objective facts? I believe all of his pro se pleadings maintaining his innocence. I believe his testimony at the PCRA hearing itself. Well, it shows that he was amenable to pleading if he wanted to. Okay. I see. You were in the middle of an answer. Thank you, Your Honor. Only when it was merited. Thank you, Your Honor. I'm really interested in, I mean, he tells us what he thought was the objective evidence suggesting he would have taken the plea had he known of it. Yes. Now, and as you know, my position has always been that the lawyer has an absolute responsibility. But he didn't do it this time. Well, at least the state court so found. Well, the state court so found, and that's a historical fact. We have to accept that. So what is the evidence that he would have taken the plea? Or that he would not have taken the plea? He would not have. Is his maintaining his innocence and his alibi witnesses over and over in these myriad pro se pleadings that he's filing while he's represented that were before the PCRA court? The PCRA court and the trial court were the same. Judge Temin received all of these things and had all of this before her when she was deciding whether or not he would have accepted the plea. She knew this guy from his pleadings as well as from the trial. And so when he comes to say, hey, you know, I would have accepted this, she already knows. He's been saying, I had all these alibi witnesses. It was a completely, you know, I was completely innocent. And he's been saying this over and over and over again. And then he says it again, despite his attorney's attempts to shut him up during the hearing, he says it again. I had alibi witnesses and I would have been shown innocent. Not only that, but also the testimony of John Konchak, of course, about his regular practice, which I see no reason to discredit and Judge Temin didn't either, that he would have talked with him about this. Now, of course, it was after the relevant period. But it is an indication, as Your Honor, Judge Slovitter mentioned, of his state of mind that he did not at that point come back and say, look, there was an offer. Can we renegotiate? And we all know as a practical matter it's always possible before trial to come back. And it may not be the same deal, but there could have been a possibility of coming back. But there was no such effort. In what cases have you tried? Personally, I've always been in the appellate level, the clerking. Well, you've heard, have you not, that most criminal defendants come claiming that they're not guilty. Is that correct? Certainly. And what percentage of those plead guilty when they see the lights of the juror's eyes or know that they're on the horizon? What percent? It's over 90, isn't it? It's got to be. But if we're going to accept this. And isn't it a fact that it's not until the last moment that defendants, when a plea agreement is put under their nose, that they plead guilty? Correct. Certainly. But they usually indicate that they're interested in negotiating it and considering it, right? And here, what he kept saying was, I'm innocent. Yeah, well, most defendants coming up to trial do that, don't they? They say they're not guilty. But I'm willing to consider your offers. Give me your offers. He didn't do that. That's what I'm saying. He didn't do that. That makes a difference because he said he's not guilty. I believe it does make a difference. I believe it does. And because it supports Judge Temin's credibility-based factual finding here, which is presumed correct, has been unrebutted, is reasonable in light of the evidence presented there, which does not include this extra letter, by the way. Which extra letter is that? He presented for the first time a letter in the federal court. Right. And Magistrate Judge Strawbridge correctly found that cannot be considered. It wasn't before the state court. So let me just see. Pardon me. Another reason, Judge Cowen, that I think we shouldn't be looking at the percentages is that would be tantamount to, as you suggested, making this a chronic sort of case. And this Court in both Day and Caruso has laid out a three-part test for prejudice, that the defendant would have accepted the offer, that the court would have accepted it. We have nothing about that. And that a lesser sentence would have resulted here. And we have evidence from that hearing showing that he would not have accepted the offer that supports Judge Temin's findings. So I don't see any reason to wait for the testimony. And that's Conchac's testimony?  You said evidence from that hearing. You're referring to Conchac's testimony? Yes. Conchac's testimony as well as Wheeler's testimony that he had alibi witnesses and would have been found innocent had they been presented. No one is found innocent. They're people found not guilty. Yes. No, I understand. No one pleads. No one claims they're innocent. They just say they're not guilty. Certainly. But his contention was that he was actually innocent. That's another. That was his contention. Unless the Court has any further questions, we respectfully request that the Court affirm the district court's denial of the writ. Thank you. Thank you. Thank you. A part of the way that this Court needs to, that a court appropriately assesses prejudice here where counsel has failed to notify their client of the existence of the plea offer. You wouldn't have an issue if you didn't have that. That's obviously the underlying ineffectiveness claim. Certainly. And a part of what the Court should be looking at here is not just what this client sort of thought about in the abstract before he knew about any plea offer, but what he would have chosen to do once he knew about the plea offer and once he'd been competently advised by his lawyer about what he's supposed to do. The fact that he's saying that his girlfriend could have provided him an alibi, evidence which he abandoned at the hearing, you know, a lawyer is going to tell him that that evidence is not going to be very strong against a sergeant in the Philadelphia corrections system who observed this guy from a foot and a half away, who watched him for two minutes and looked at 300 pictures that didn't include him and didn't pick him out. But once he saw the picture and once he saw him in person, said that's the guy, a competent lawyer looking at that evidence was going to say, you need to think pretty seriously about taking this deal because if you don't take this deal, you could end up with a much more serious sentence than what you've got here. And the evaluation of prejudice needs to consider not just the fact that he was sort of irrationally saying, well, I'm innocent and I've got these pleadings, but how he would have come around once he'd sort of faced the cold light of day and realized how weak his case was and how much trouble he really was in here. Thank you very much. Very excellently argued by both of you. I have not seen either.